Mr. Sachs, whenever you're ready. May it please the Court, I'm Mr. Sachs of the Appellant, Meltech Corporation. This case, albeit not as intricate and a little more mundane as a prior case, is an issue revolving around a definition of scope, whether it's a hard bid, design build, they still have all of the normal contract clauses, different site conditions, changes, and it all revolves around the scope issue. The question here is whether the stairs and the walkway were in the scope of the RFP. And that seems to be related to whether or not, what the difference is, if any, between a building envelope and a building structure. And I think so, Your Honor, but in this case, I'm sorry. So the board says, rests on this being a building structure, and I think you make that reference as well. Your proposal called it five feet within the building structure. You lose if it's the structure, right? So how do you get around that? Well, generally speaking, I would say two things. One is, it's still, whether it's in the structure or not in the structure, there has to be a scope of work related to that work. There is no, the government admitted in the correspondence appendix, I believe it's 1118, as that the stairs were not in the RFP, and the walkway in 1114 of the appendix, the government admits that the walkways were not within the RFP. So whether or not it has to do with the structure, it still has to be within the scope of work. And if the scope of work... Can you actually show me exactly what the government said when you say they admitted the stairs weren't part of the scope of work? Yes. I mean, that seems completely contrary to the arguments they made to the board and to us. I would read from appendix 1118 in response to RFI 93, and maybe I'm not... Can you identify what part you're going to read to us so we can all be on the same page on 1118? I'm sorry. At the last sentence, at the bottom of the page, the government's response to the RFP states, that said, the RFP does not contain specific requirements for fixing the exterior steps. But the paragraph above says the steps are part of the building and it is the contractor's obligation to make them code compliant. I don't disagree, except that's their interpretation, that it's part of the building. And I believe, going back to the initial... Well, this is what you're relying on to suggest that the board agreed, or the government conceded that they weren't part of the building. This clearly doesn't help your argument. No, no. I didn't say they weren't part of the building. They weren't part of the scope of work. Well, how can you say that when you look at the sentence that you just told us to look at? It says, that said, the RFP does not contain specific requirements for fixing the exterior steps. You still go back... Let me finish. I'm sorry. The contractor may determine the best means to do so. However, Maltek should not expect additional compensation for this work. All the suggestions, you're obligated to fix the steps, right? You've got to make them code compliant. That's the other issue we had with the board decision. I don't have to make anything code compliant that's not in the scope. Go back. The issue is simply the scope. What tells me this 1118 is not helping you? What else suggests that repairing the steps and making them code compliant is not within the scope? Okay. Let's go back to the initial question. I apologize for going off course. If you would look at Appendix 256, Paragraph 3.3, talks about the building being within the exterior walls, which is the area included within surrounding exterior walls, exclusive of vent shafts, ports, areas of the building not provided with surrounding walls included in the building. Wait. You're talking about Appendix 256? I'm sorry? Appendix 356. 256. I'm sorry. 34.3. Space layout? Is that what you're referring to? No. 3.3. Up above it on top of the page. Oh, okay. Okay. And what are you telling us this means? Talks about that the measurement of the building is from the exterior walls. But that doesn't say anything about scope. The relevant scope paragraph. It tells you. No, no, no. Don't interrupt. The relevant scope paragraph is on 253, isn't it? Yes. Sorry, I'm having a problem matching up. We're looking at 2.1, right? That's the first paragraph, the general paragraph. It says the scope of the work includes complete renovation of the building structure to the requirements as defined herein. And it goes on. And then it uses in a different way the term envelope. And isn't that the scope? It uses structure. The thing you're reading is just talking about what the building area is. But it doesn't say anything about scope, does it? No, no. The issue is whether or not the stairs were in the scope of work or within the area of the building to be renovated. There is nothing. This one uses in 2.1, the one Your Honor just read, speaks specifically interchangeably about building envelope and structure. There is no- Well, that's a good question. It uses them, but does it use them interchangeably or does it use them as two distinct terms? I believe they use them interchangeably, the building structure and the building envelope, because further on down it says, and this is a perfect example, at the end of 2.2. At 2.2, the building says the building envelope must prohibit water infiltration and mold must be remediated. Looking at that sentence, if the contractor came onto the building and the roof was leaking, but the roof was definitively not part of the scope of work, putting on a new roof, would the contractor then have to remediate the roof because of this generic statement that it shall prevent water infiltration? Well, this is the same exact thing, which is if I come onto the site and these are existing steps, it's the same thing with the boards arguing about ingress and egress. Your time is due, so I want to just interrupt you and ask a question. Do you think the scope of work is limited to the envelope? The envelope is the four walls, right? Correct. Is it limited to the envelope? It says within the overhang as well. Five feet. Well, it's the overhang of the roof. No, there's a clause in here that says it goes five feet beyond the building. Right. So it can't just be the envelope. The five feet is for the site work. There is no building on the site work. So my argument is whether or not— I mean, here's my problem. Even if I found your argument convincing about the scope phrase we're talking about and that envelope and structure are the same, it's at least ambiguous, isn't it? And if it's ambiguous, you lose because you didn't raise an objection to this prior to the award. Prior to what? Prior to the award. If it's a patent ambiguity, then you have to raise it. Well, again, I've been doing this a little while also. So have I. And I do have an issue with the concept of patent ambiguity. Well, you can have an issue with it all you want. It's our case law. So the question is, in order to win this case, you have to not only prove that this— you have to prove that this is unambiguously read as envelope and structure are the same thing, right? If we find that it's ambiguous as to whether envelope and structure are the same thing, then you lose. Respectfully, I don't agree with that. Forgetting the patent versus latent argument, my issue is very simple. Where are the stairs within the scope of work? Neither the government or anybody can point to a provision that says— If we think the stairs are part of the structure, then it's within the scope of work. Why? Because it says the scope of work includes complete renovation of the building structure. So if the stairs are part of the structure, which the board found, then it's in the scope of work. If there is nothing— It's the plain language of the contract. The contract clearly defines what has to be done within that 38,000 square feet. There are 86 pages of specifications. There is not one page about remediating stairs or remediating walkways. At page—the government admits the walkways were not within the scope of the contract. That was a separate provision. Sir, can I ask you about something that I saw in the government's brief, the red brief on page 19? I don't know if you have the brief. I'm looking at page 19 of the red brief. The question that I've got for you is related to the sentence where it said, the board also recognized that even prior to the dispute, Meltec had planned to perform work on the exterior stairs as noted in its design submissions. So that's the sentence that's like at the top of page 19. Do you agree with that statement? Not prior to award, but prior to the dispute, the drawings did note— and I'll bring it up because it was raised in the government's brief. On the drawings, C-101 and C-103, there are footnotes, DE 15 and 16. 15 says there'll be demolition. 16 says—15 says there'll be no demolition. 16 says the demolition, but the last four words of it say to accommodate new work. So yes, there was some demolition for their new work that is a means and methods because the building required—part of the scope of work required a new facade. So did you agree—it sounds like you agree with the statement that was made on page 19 by the government. Did you agree that that work that you were going to perform on the exterior stairs was within the scope of work under the contract? No. It was part of our design after award of the contract. It was part of Meltek's design. The facade was part of the scope of work. It's like a roof. The roof is part of the work. The manner and method of connection of the roof to the structure belongs to Meltek and its designers. If you look at—part of the problem with my argument is, for example, the reference to NFPA. If you go to Article 4, Article 4 of the NFP talks about to assist the designers for new work. Let me specifically read that provision. It doesn't speak about analysis of existing work. Part 4 specifically states this is the industry criteria. What page are you on? I'm sorry? You appear to be reading from a page. What page are you reading from? Oh, I'm sorry. Appendix 276. At the top, the introductory industry criteria, it speaks to standards or manuals that may be of assistance to the designers where applicable should be assumed to be all-inclusive in the development of the design. All of these items, NFPA, all of them are after award. As a realistic matter, and this goes to Your Honor's point, is when you're doing a site investigation or preparing a proposal, the concept of doing an analysis of a 39,000-square-foot building to determine which elements of it are code compliant, when, in fact, that was originally—the original site investigation was supposed to be done by the government's designer, Black & Veatch. And that was their issue. So the issue that we keep raising, whether or not it's the structure is, the question is whether it's the scope of work. And there is no place for remediating the stairs or the walkways in the scope of work. You used Rebubble. Will you stir some time? Thank you. Thank you. Good morning, Your Honor, and may it please the Court. Before you get started, can I just ask you this? Is this case somehow, like, however we determine what building and structure means or what scope means, is it going to affect—I know the Board's decision said there was a bunch of related consolidated appeals. Is that going to affect what we decide here going to affect any other thing that's still pending at the Board or possibly on appeal to us? My understanding, Your Honor, is that the other consolidated appeals below relate to other issues in the construction project, so they don't relate to this particular exterior stair co-compliance remediation issue that is before the Court in this case. So— So, no, I don't believe this is going to have a direct impact on the other pending— Am I correct? This case is about, like, $7,000? That is correct, Your Honor. Okay. And how come this stuff doesn't all get consolidated at some point before it comes before the Courts or before the Board? Your Honor, my understanding is that this is part of—this is one of 14. There were two appeals before the BCA that are coming up in this appeal. Those two appeals are part of 14 consolidated appeals below, so they are consolidated for Board purposes below, but my understanding is that, for whatever reason, the parties below have litigated this case out front and come to a summary judgment decision, and that's why it's now ripe for appeal. But you're not telling us, as you respond to Jeff Hughes, that the reason they did that is because this is going to set some precedent that's going to affect the appeals coming up the pipeline? I don't see how this case is necessarily going to set a precedent that would make all the other appeals go away or somehow directly impact— The other appeals don't revolve around our interpretation of that scope clause that we were talking about earlier and the difference between envelope and structure. They're just various other aspects of this overall renovation of this old building. That is my understanding, Your Honor, and specifically this case— Is it just because the Board dockets these appeals as separate things when they're different claims? That's my understanding, is they come in, they're docketed as different appeal numbers, and the Board has 14 appeal numbers docketed as related to this construction project. And Mr. Sachs can correct me if I'm wrong, but my understanding is that this doesn't have any direct impact on the other 12 pending appeals below. Getting into this case, I mean, your friend says we should take the text of its word, and the work is limited, and there is language there, to five feet from the building envelope. So why don't we use the building envelope, and why aren't we constrained by that in terms of defining the scope? Your Honor, to—as an initial point, the arguments related to building envelope that have been presented to this Court were not made before the Board. That argument—there was no argument before the Board by Meltek that any part of his scope was measured or related to the building envelope, but rather, as Mr. Sachs made clear here today, the argument below focused on this issue that new construction was not meant to be renovated to be co-compliant, but only—sorry, existing construction was not meant to be renovated to be co-compliant, but rather only new construction had to be co-compliant. That was the focus of the argument below. And even the Board, in summarizing the arguments below, noticed that—correctly, that the theories presented were basically that either this renovation was not part of the scope because the stairs are not part of the structure, or for—under the five-feet limitation on site work, the work that the contractor did to make these stairs come into compliance took them more than five feet outside of the building, and therefore that work is not covered by the contract. Is the five-feet—I'm looking at—there's a bunch of clauses here, and I don't know where all these come from, but the five-feet one looks like it's on page 255 in— It's Appendix 253. Oh, is it repeated? Yeah, it is repeated, and just to keep us on 2.1, where you can see that above, and 2.3 on 253 of the appendix. Oh, it says within five feet—but there it doesn't say envelope, right? It says structure. Correct, and the argument that— And later on, it just says building. It talks about building—the five-foot limitation on site work relates to the structure, and under the contract, building and structure are equivalent, but as Runner pointed out, the building envelope is something different. The building envelope, the contract makes clear, for example, in 2.2, that is the four walls that basically keep the elements outside from going inside of the building. That is the barrier, and Section 2.2 talks about making sure that barrier doesn't permit water infiltration and other things to come inside, but to put a point on the site limitation on work, that is not measured by the building envelope. That is measured by the structure of the building per its explicit text in the contract, so all of the arguments made in Appellant's brief before this Court that are premised on that faulty premise are therefore incorrect. So you're saying that it's five feet beyond the structure? Correct. Okay, but what we're talking about here is not fixing the stairs, right? In order to fix—what it's going to be done to fix the stairs has nothing to do with the stairs. It has to do with the work on the sidewalk below. Your Honor, before the Board— Right about that? No. Okay. Before the Board, it was undisputed that the issue that needed to be remedied was a compliance problem with this NFPA 101 Life Safety Code, a dimensional uniformity problem between the stair risers. That was the problem undisputed before the Board. The contractor in this case chose to remedy that stair dimensional uniformity deficiency by correcting the sidewalks abutting those stairs. And that's reasonable, right? There's something unreasonable about that, right? I mean, we're going to remedy whatever deficiency, whatever problem there was at the stairs, not by doing anything to the stairs, but by doing something to the sidewalk. The reasonableness of that solution has not been disputed. However, it was, per this Firm Fixed Price Design Bill contract, the contractor's choice to remedy the situation that way. Ultimately, as we lay out in our brief— Let me see if I follow exactly what you're saying. Even if the sidewalk's not part of the structure, the stairs are. The stairs are, and therefore— And if there's a problem with the stairs, then it's the contractor's responsibility to fix the stairs. They could do that. I assume there's a bunch—well, maybe not a bunch, but they could tear out the stairs and build new ones. Correct. Or they could just raise the sidewalk that had sunk and put them out of compliance. The latter seems cheaper and, I guess, was acceptable to you all. But what they were remedying was not the sidewalk. It was the problem with the stairs, which is part of the structure. It was the dimensional uniformity problem among the risers and the stairs that they were remedying. They were not remedying— But the remedy involved doing something to the sidewalk, right? Per their choice, yes. Okay. Did that go beyond five feet of the structure? The board, Your Honor, correctly as related on our brief, found that they failed to produce evidence that the work required to fix that portion of the sidewalk that they chose to fix actually took them further than five feet from the structure, which necessarily includes the exterior stairs per logic and per the contract documents. Therefore, it's a failure of proof at that point as to whether it actually took them outside of the five feet abutting the stairs that had to be fixed. Undisputedly had to be fixed. But hypothetically—not this case—hypothetically, if they had undisputed evidence that some of the work they did on the sidewalk got them beyond five feet of the structure, then that wouldn't be covered even though we've got 101 compliance stuff. Your Honor, there are other requirements under this contract, as we identified in our brief as well, that would mean that the sidewalks, to a certain extent, were also within the contractor's scope. The contractor had to, for example, connect the building to the public walkway system. That, of course, includes a consideration of the walkway that's going to connect those two parts of the world. Was all of that within five feet of the structure? That was not necessarily within five feet of the structure. As well, the contractor had to make accessibility considerations for this building. There were other, I guess, exceptions to the five feet limitation on the site work. But this was not one of the exceptions? But again, that was not an exception. And here, as Your Honor pointed out, we don't have facts propounded by the contractor that this work took them more than five feet from the structure, which includes the stairs. It has to include the stairs, because that's the only method of ingress and egress to and from the building. And again, to put a point on the building envelope arguments, those are not preserved, and the court should consider those building envelope arguments to be waived. As Your Honor pointed out, yes, if the structure is the limit of the scope, then the contractor in this case does not prevail on this appeal. Appendix 11-14-11-18, of course, do not concede. There's no concession there by the government that the walkway or the- Some of the arguments that were raised were that the stairs were maybe even like at 10 feet out or something. So what is your best support for why, of course, the stairs still need to be remediated if they were outside that five-foot parameter? Well, Your Honor, because the five-foot limitation on site work, again, is not measured from the building envelope, which, as we discussed with Judge Hughes, is the four walls of the building, the limitation on site work, the five feet from the structure, would begin at the end of the stairs. Regardless of how long the stairs are, whether they're five feet, 10 feet, 20 feet, it wouldn't matter for that purpose. Was there a specific exclusion on walkways? So I do, and I think there is some merit to what the discussion was that you were having with Judge Hughes about the fact that if they chose to use the sidewalk as the fix because that's a cheaper fix than taking out and tearing up the stairs and rebuilding them. But were they almost trying to somehow circumvent the contract by doing that fix with the walkways? And was there such an exclusion that was written into the actual contract? I don't know that there's been an allegation in this case of a circumvention of the contract's requirements or somehow trying to get more compensation nefariously. As far as an exception for the walkways, I'm not quite sure I follow Your Honor's question. But in this case, again, this is a firm fixed-price design-build contract where the contractor was required both to propose a price to design, specifically as the contract says, in accordance with the NFPA 101 Life Safety Code, to provide secure means of ingress and egress to and from this building, which necessarily encompasses the exterior stairs, the only means of getting outside of the building. And they even in their proposal note that they will have their design comply with this NFPA 101 Life Safety Code. I guess all of that is to say that I'm not really sure there's an exception for what they did in the walkways, given that the contract specifically required that they do this, and they understood that they were going to have to do this in their proposal. And certainly before the dispute arose, as Your Honor pointed out on page 19 of our brief, and that that should be given weight by this court. I don't want to belabor the points, Your Honor. At this point, I can conclude that there are no further questions. With respect to the request that the court affirm the court's decision below. Thank you. Mr. Satzman, are we ready? Well, we still have two minutes of rebuttal. Please, the Court. I would just like to answer certain specific questions. One is why would both disappeal, given the monetary value of the issue? The other issue is that we disagree. Appellant disagrees completely with the Board's interpretation at the time and its application of the Spearing Doctrine. They all revolve. What I'm curious about, do you agree that our decision here is not going to have any impact on what's going on at the Board in the other cases? That's what I was addressing, Your Honor. I apologize. I do believe if it's this whole concept of assumption of risk. No, no, no, no, no. Yes, I do believe it. This clause we're talking about, about the scope of work, about the difference between envelope and structure, is that specific issue raised in any of these other appeals? No, Your Honor. Okay, thank you. The several arguments I would like to make and clarify is if the Court would look at, and I believe it was in the appendix, at 842 and 843, there were several questions about the five-foot line, and the only question, the only elements of work, it's the answers to 27 and 30 in the bid invitation, the only elements of work under 27 that specifically apply are the dumpster pad, enclosures, and area of recycling. There is nothing, and again, this is our position, is that the NFPA, everything else with respect to code compliance, is after award of the contract. What we are speaking about is what is reasonable to understand at the time, and the concept of doing a code-compliant review in the two hours of a site investigation is not, I have never seen that as part of any requirement in a contract. As to work that is done afterward, again, I go back to the issue of scope. After it's done, our designer must design, pursuant to all applicable codes, the latest edition, that has nothing to do with the original scope of work as to whether it included the stairs or not. Even under either argument, envelope or structure, if there is no work requirement for the stairs, which there is none on any of the drawings in any of the RFP. But you agree the structure includes the stairs, right? I'm sorry? Do you agree the structure includes the stairs? Not under this RFI. My point is that even if it did, there is no scope of work. The scope of work in these 86 pages of the RFP applied to the building, the roof, and those things related to the building. And it did have ingress and egress. But the concept, this building was in operation since 1950. Those stairs were there. These were existing stairs. There was no requirement for new stairs. And there's no requirement to repair the existing stairs. Are you saying that when the contractor bid, because this is not, it's not, I mean, it's got a lot of details, but it basically was you have to design and build a whole scale renovation of this building, right? That's what the project was. Are you suggesting the contractor didn't understand that as part of that it was required to make sure it was code compliant with the new codes that had changed since the 50s? Once it became the design. No, no, no. That was really a yes or no question. Did the contractor understand when it bid on this contract that it was required to bring this building up to code? Yes, the areas of the building that were in its scope of work. The scope of work is renovation of the whole building. But if you use the term, for example, ingress, egress, life safety, where does it stop? Does it stop at the five-foot line? Does it stop at the structure line? Does it stop in the parking lot? It's the same with the anti-terrorism force protection. You can extend the five-foot limit to 50 yards of weight if you want to just use the generic term life safety. It's got to be applicable to an area of work. Thank you. Thank you. Okay, we've already submitted the case. Go ahead. Just to point to, it was in the brief at page 29, as well as during the motion for summary judgment, it was a dimensional layout showing the five-foot line. Okay, thank you.